775 P.2d 111

**WORLEY HIGHWAY DISTRICT, a political subdivision of the state of Idaho, Third Party Plaintiff/Appellant,**

v.

**YACHT CLUB OF COEUR D'ALENE, LTD., a partnership, Third Party Defendant/Respondent.**

No. 17178.

Supreme Court of Idaho.

May 22, 1989.

Rehearing Denied July 11, 1989.

Craig R. Wise, Coeur d'Alene, for third party plaintiff/appellant.

Nixon, Nixon, Lyons & Bell, Coeur d'Alene, for third party defendant/respondent. John T. Mitchell argued.

BENGTSON, District Judge Pro Tem.

Kootenai County commenced this action against respondent Yacht Club (hereinafter the "Yacht Club") by the filing of a complaint for injunctive relief. An amended complaint was later filed alleging that a sixty foot road which "runs through" Lots 5 and 6, Section 14, T. 50 N., R W.B.M., in

Kootenai County, Idaho, was dedicated to the public by a plat filed prior to the issuance of a patent covering Lots 5 and 6 by the United States to one Byron Lewis in 1906 [1]; that said road or strip of land and a boat ramp constructed at the west end thereof "constitute a public road, street or highway;" and that the Yacht Club is now owner of Lots 5 and 6 and has unlawfully obstructed such road by constructing a fence across the same. The amended complaint seeks, inter alia, an order of the Court permanently enjoining the Yacht Club from so obstructing the road. The county, however, did not seek to quiet title to the sixty foot strip of land it alleges to be a public road, street or highway.

The Yacht Club answered the amended complaint by denying, among other things, that the sixty foot strip in question is a public road or highway and that if it was at any time a public road it had been abandoned many years ago.

Appellant, Worley Highway District (hereinafter the "highway district"), concededly a political subdivision of the state of Idaho, moved to intervene in the said action, claiming an interest in the sixty foot strip in question. Such motion to intervene was granted, and the highway district filed a third party complaint alleging that the sixty foot strip of land in question lies adjacent, contiguous to and adjoining Lots 5 and 6 to the south of said lots; that such strip of land was dedicated to the public; that said strip of land is located within the highway district, and that the latter has "jurisdiction and ownership" of the strip of land in question.

By such third party complaint, the highway district prays that title to the strip of land be quieted in the highway district as against all individuals and public and private entities including the Yacht Club and Kootenai County.

Kootenai County answered the third party complaint by admitting certain allegations and denying certain other allegations.

The Yacht Club answered the third party complaint by denying all the allegations thereof, except it admitted that the highway district is a political subdivision of the state of Idaho, organized pursuant to chap. 27, title 40, Idaho Code, and that the Yacht Club is a partnership and is owner of Lots 5 and 6. The Yacht Club affirmatively alleges "that there has never been a lawful plat filed for record in Kootenai County dedicating any lawful roadway, nor has there been any acceptance of a plat by Kootenai County or any other political entity."

The highway district then moved for summary judgment against Kootenai County; the court granted such motion, and dismissed Kootenai County as a party to the action both as the plaintiff and as a third party defendant.

The court thereafter tried the matter, sitting without a jury, on the issues joined by the highway district's third-party complaint against the Yacht Club, and the latter's answer to the third-party complaint.

Prior to trial the parties stipulated to a number of relevant facts. Only two witnesses testified at the trial, both of whom were called by the highway district; several exhibits were offered and admitted.

There appears to be no dispute as to the facts proven at trial; the highway district's appellate brief sets out the facts in detail and the Yacht Club, in its appellate brief, states that it "concurs with the statement of facts set forth in (the highway district's) brief."

Although the trial court did not file separate findings of fact and conclusions of law, it recites numerous facts in its memorandum opinion and states that such opinion constitutes the findings of fact and conclusions of law.

A review of the record, the highway district's statement of facts in its appellate brief, and the trial judge's memorandum opinion leads us to conclude that the following facts are without dispute and are

---

1. Alternatively, Kootenai County alleges that it "acquired said road by prescription due to five years use."

supported by substantial competent evidence.

In the late 1800's the United States government operated a military reservation called the Fort Sherman Military Reserve. The area of the reserve included much of the present city of Coeur d'Alene, including the North Idaho College area, City of Coeur d'Alene Park, Coeur d'Alene Cemetery, Kootenai County Courthouse, and much more of the general southwest corner and west side of the present city of Coeur d'Alene. The reserve included certain real property located to the west of the Spokane River, some of which is commonly known as "Blackwell Island," and upon which the subject property is situated.

The federal government abandoned the reserve, and on June 2, 1904, it prepared written instructions to F.M. McCoy, Examiner of Surveys, Seattle, Washington, to survey the reserve and addition thereto for purposes of platting it for disposal thereof. The instructions were specific as to the property east of the Spokane River, *i.e.*, as to dividing the property into lots and laying out streets. The property on the west side of the Spokane River was to be appraised in tracts not to exceed forty acres, but such instructions did not mention the laying out of streets on the portion of the property lying on the west side of the Spokane River.

The survey of the property was conducted in 1904, and field notes were prepared. The field notes on page 137 identify the area west of the river, namely Corner # 1. Subsequently, on page 164 of the notes, the surveyor records:

I lay out a 60 ft. road extending from the Bridge along S.S. bdy. of Lots 5 and 6, in sec. 14 by setting stakes 60 ft. N of corners established on S. bdy. of reservation.

From the field notes, a plat of the reservation and addition was drawn up. On the west side of the Spokane River, a sixty-foot road is drawn in, pursuant to the field notes, connecting to "the bridge" crossing the river, and is identified as a road sixty feet in width, and the chain measurements are noted as well on the plat.

The plat reflects that it was approved by W.A. Richards, Commissioners of the Land Office, on October 28, 1904, after corrections were made to lots numbered incorrectly by the surveyor. The plat was filed in the General Land Office in Boise, Idaho, and became the "official plat" of the federal government's property. Subsequently, the federal government proceeded to sell the platted parcels.

In 1906, Mr. Byron R. Lewis obtained title to Government Lots 5 and 6 in Section 14, and his patents state the acreage purchased as shown on the plat, and that the description is "according to the official plat of the survey of lands, returned to the General Land Office by the Surveyor General." The 1904 plat and McCoy's field notes are the only two documents in existence in 1906 (and to date), that would identify where Lots 5 and 6 are located in Section 14.

Almost all, if not all, of the remaining parcels in the 1904 plat were sold by patent from the federal government, and these patents as well include the language "according to the official plat of the survey of said lands, returned to the General Land Office by the Surveyor General."

The plat was never recorded in the office of Kootenai County Recorder; however, there are references to it contained in the index volumes and in the abstracts of plats, and a copy of the plat is contained in the records of the Kootenai County Recorder.

A public road has never been built on the subject property.

The United States government claims no interest at this time in the sixty-foot strip of land in question.

In its memorandum opinion issued following trial, the trial court stated that the issues presented were 1) whether or not the sixty-foot strip was ever a public road and, if so, 2) whether such sixty-foot strip was ever abandoned as a public road, assuming that it had been a public road.

Based upon the foregoing facts, the learned trial judge concluded that the 1904 plat of the area of land which includes the sixty-foot strip of land in question, was a

"valid statutory plat," and that such strip of land or roadway "did become a part of the valid plat." Nevertheless, the court further concluded that there had been no legally efficacious dedication to the public of the sixty-foot strip in question because there was no evidence proving that the federal government's offer to dedicate (by virtue of the preparation and filing of the 1904 plat in the federal land office in Boise), was ever accepted.

As a matter of law, the trial judge further concluded that even if the evidence had established a valid dedication, the road created thereby had "long since been abandoned under the provisions of former Section 40–104, I.C."

The issues for resolution on this appeal are:

1. Whether the trial court erred in concluding as a matter of law that there was no valid dedication of the sixty-foot strip of land in question; and

2. Whether the trial court erred in concluding as a matter of law that, even assuming there was such a valid dedication, the road laid out in such plat had been abandoned under the provisions of former I.C. § 40–104.

For the reasons set forth hereinbelow, we conclude that the trial judge was in error in reaching each of the conclusions of law mentioned immediately above.

 At the threshold, we note that there are two methods by which a valid dedication to the public may occur, *i.e.*, a statutory dedication and a common law dedication.

### The Statutory Dedication Issue

The trial judge, although specifically concluding that the 1904 plat was a "valid statutory plat," further concluded that

"there has never been a valid statutory dedication of the 60–foot strip to the pubic as a roadway."

Under the statutory procedure which was in effect in 1904[2], (when the plat prepared by the federal government was filed in its General Land Office in Boise) the land in question would have been dedicated to a public use if 1) a plat thereof was prepared by the owner or proprietor "which shall accurately describe all the subdivisions of such tract or parcel of land, numbering the same by progressive numbers, and giving the dimensions and length and breadth thereof and the breadth and the courses of all streets as established therein" (1899 Idaho Sess. Laws, H.B. No. 95, Sec. 95) and 2) such plat, duly acknowledged, is "filed for record and recorded in the office of the recorder of the proper county." 1899 Idaho Sess. Laws, H.B. No. 95, Sec. 96.

It is obvious that upon such requirements being met, the dedication to the public would be complete, since 1899 Idaho Sess. Laws, § 97 of H.B. 95 provides: "The acknowledgement and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use; ..."

Furthermore, 1899 Idaho Sess. Laws, § 99 of H.B. 95 infers that once lots described in the plat are sold, the plat may not be vacated: "Any such plat may be vacated by the proprietors thereof *at any time before the sale of any lots therein*, by a written instrument declaring the same to be vacated, duly executed, acknowledged or proved and recorded in the same office with the plat to be vacated...." (Emphasis added.)

**2.** It should be noted that in 1905, and thus prior to the sale of lots to Lewis in 1906, the Idaho legislature added another requirement for a statutory dedication, *i.e.*, that no plat shall be accepted for recording by the recorder of any county unless such plat shall first have been submitted to and approved by an appropriate governmental body, such as the governing board of a town, village or city. Subsequently, the statutes were changed to provide that no street, alley or highway dedicated by the owner to the public shall be deemed a public street, alley or highway unless the dedication shall be accepted and confirmed by the city council or by the commissioners of the county-wide highway district. Prior to the 1905 legislation, there did not appear to be any statutory requirement of approval or acceptance of an offer to dedicate by any public body, as discussed infra.

It appears to this Court that both of the requirements to effect a statutory dedication under the statutes applicable in 1904 have been met.

▉ The trial court, in concluding that the 1904 plat is a "valid statutory plat," having been prepared and recorded in accordance with then existing federal law, noted that such plat was "validated by enactment of former Idaho Code Section 49–2213 which now exists in similar form as Idaho Code Section 50–1315." [3] In 1904, the predecessor of said sections read in pertinent part: "None of the provisions of this chapter shall be construed to require replatting in any case where plats have been made and recorded in pursuance of any law heretofore in force...." *See* 1899 Idaho Sess. Laws, 5th Sess. p. 214, Sec. 106; Idaho Political Code, 1901, Ch. LXXIII, Sec. 1973.

Although concluding that the 1904 plat was a "valid statutory plat," with the help of the curative predecessor of present I.C. § 50–1315, the lower court, nevertheless, further concluded that "there has never been a valid statutory dedication of the 60–foot strip to the public as a roadway." Unfortunately, the trial court failed to articulate in any manner the factual predicate upon which it concludes there was no valid statutory dedication in the case at bar.

Under *existing* Idaho statutes, the statutory scheme governing the dedication of real property to the public involves two steps, the first of which is an *offer* by the owner to "dedicate" the property to the public, and the second of which is an *acceptance* of such offer by the public. The *offer* to dedicate is evidenced by the acknowledgement and recording of a plat under I.C. § 50–1312, and the *acceptance* by action of a public body "accepting" and "confirming" the "dedication," as required by I.C. § 50–1313.

However, under the statutory scheme existing in 1904, all that was apparently required was a proper recording of a plat, and no law has been cited by Yacht Club to support the proposition that in 1904 an acceptance of the plat by any public body was required in order to complete the dedication process. While it is clear that subsequent to 1904 the Idaho legislature amended the statutes relating to statutory dedication so as to require the acceptance by a public body of an offer to dedicate, the statutes in effect in 1904 make no reference to the necessity of such an acceptance.

Since the statutes existing in 1904 relating to statutory dedications make no reference to requiring acceptance of a plat by a public body, and in 1905 the legislature amended the statutes relating to dedication by adding a requirement that no plat shall be recorded unless it shall have been accepted and approved by a public body, we can only assume that the legislature intended to change the then existing law (here, by adding a requirement of acceptance). *Hopson v. North American Ins. Co.*, 71 Idaho 461, 233 P.2d 799 (1951); *Stewart v. Common School District No. 17 of Owyhee County*, 66 Idaho 118, 156 P.2d 194 (1945); *State ex rel. Wright v. Headrick*, 65 Idaho 148, 139 P.2d 761 (1943). We are thus led to the ineluctable conclusion that in 1904 when (as found by the trial judge), the "valid statutory plat" was filed, it was not necessary that the plat be accepted or approved by a public body in order to effect a valid statutory dedication.

As noted above, the trial court did not explain why it concluded that, although the 1904 plat was a "valid statutory plat," there had been no valid statutory dedication to the public of the sixty-foot strip of land in question.

Did the trial court, in concluding as a matter of law that there was no valid statutory dedication, reach such conclusion because it believed that under then existing

---

**3.** Yacht Club, in its brief on appeal, appears to take issue with the trial court's conclusion that the plat filed in the Government Land Office in 1904 was a "valid statutory plat." If the Yacht Club contends that such legal conclusion was in error, its assertion is without merit since Yacht Club filed no cross-appeal. *Lepel v. Lepel*, 93 Idaho 82, 456 P.2d 249 (1969); *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 414 P.2d 879 (1966); *National Motor Service Co. v. Walters*, 85 Idaho 349, 379 P.2d 643 (1963).

statutes an acceptance of the offer to dedicate (as evidenced by the filing of the 1904 plat), was necessary, and that the evidence was insufficient to find such an acceptance? Or was it because the plat itself was insufficient to show an intent by the United States to dedicate the sixty-foot strip to the public? Or was it because the laying out of streets by a government agent does not, as urged by Yacht Club, amount to a dedication of such streets to a public use? Or was it because the plat was not filed for record in the office of the Recorder of Kootenai County?

Perhaps there were other reasons why the trial court held that there was no valid statutory dedication of the sixty-foot strip in question despite its conclusion that the 1904 plat was a "valid statutory plat." The trial court simply fails to explain why it concluded that there was no valid statutory dedication.

Under such circumstances, we would ordinarily remand this matter to the trial court for further findings and conclusions, because we are unable to say from the record before us whether the court below recognized or properly applied the elements necessary to create a valid statutory dedication in rendering its decision. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982); *American Mining Co., Ltd. v. Trask*, 28 Idaho 642, 156 P. 1136 (1915).

However, we deem it unnecessary to remand this matter to the trial court for further findings and conclusions since, for reasons discussed below, we conclude that there was a valid common law dedication of the sixty-foot strip of land in question.

### The Common Law Dedication Issue

Despite concluding that the 1904 plat was a "valid statutory plat," and finding that the federal government had sold "the majority, and likely all," of the parcels described in such plat "according to the official plat ...," the court below concluded that there had been no common law dedication of the sixty-foot strip designated as a road in the plat.

Such latter conclusion is contrary to established Idaho law.

In *Pullin v. Victor*, 103 Idaho 879, 881, 655 P.2d 86, 88 (Ct.App.1982), the Court of Appeals clearly stated the elements of a common law dedication: "The essential elements of a common law dedication of land are (1) an offer by the owner, clearly and unequivocally indicated by his words or acts evidencing his intention to dedicate the land to a public use, and (2) an acceptance of the offer by the public." (Citations omitted.)

■ The trial court concluded that the first element of a common law dedication, *i.e.*, a clear and unequivocal offer by the owner to dedicate the land to a public use, had been "met" in this case. We agree with such conclusion. In *Boise City v. Hon*, 14 Idaho 272, 279, 94 P. 167, 168–69 (1908), this Court cited Abbott's *Municipal Corporations*, §§ 729–730, with approval: "The act of filing and recording a plat or map is sufficient to establish the intent on the part of the owner to make a donation to the public."

Nevertheless, the trial court, despite its factual finding that the federal government sold "likely all" of the lots laid out in the 1904 plat by reference to such plat, concluded that the second requisite element of a common law dedication, *i.e.*, an acceptance by the public of the federal government's offer to dedicate, did not exist. We believe the court below erred in concluding there was no such acceptance.

For many years this Court has recognized that an offer to dedicate is accepted when lots are purchased with reference to a filed plat.

In *Boise City v. Hon*, 14 Idaho 272, 94 P. 167 (1908), the owner of real property dedicated streets by the filing of a plat and sold lots in reference to such plat. There was no acceptance or approval of the plat by any public agency, nor was there a formal acceptance by any public agency of the owner's offer to dedicate. The Court succinctly concluded: "[the owner's] offer of dedication was sufficiently accepted by the public when some of its members acted upon his offer and purchased lots with

reference to the plat filed [by the owner]." (Citations omitted.)

The law enunciated in 1908 in *Boise City v. Hon, id.*, remains the same today. In *Pullin v. Victor*, 103 Idaho 879, 881, 655 P.2d 86, 88 (App.1982), this Court, citing *Boise City v. Hon* with approval, stated: "It has been held in Idaho that an acceptance of a proposed dedication may occur when the person who plats the property sells lots with reference to such plat."

To like effect in recent Idaho cases, *see also Pugmire v. Johnson*, 102 Idaho 882, 643 P.2d 832 (1982); *Boise City v. Fails*, 94 Idaho 840, 499 P.2d 326 (1972); and *Smylie v. Pearsall*, 93 Idaho 188, 457 P.2d 427 (1969).

While recognizing the firmly entrenched principle of law enunciated in *Boise City v. Hon*, 14 Idaho 272, 94 P. 167 (1908), and consistently followed by Idaho's appellate courts, *i.e.*, that a common law dedication occurs when a plat is filed and lots are thereafter sold with reference to the plat, the trial court nevertheless, concluded that there had been no acceptance of the United States government's offer to dedicate the sixty-foot strip of land in question to the public. Such offer to dedicate is, of course, established by the filing of the "valid statutory plat" in 1904. In its opinion filed in this matter, the trial court stated that "whether acceptance of a proposed dedication has occurred is an issue of fact." We agree with such latter statement. The question of whether there has been an acceptance of an offer to dedicate *is* a question to be determined by the trier of fact. *Pullin v. Victor*, 103 Idaho 879, 655 P.2d 86 (App.1982).

However, the lower court, although specifically finding as a matter of fact that "the majority, and likely all of the parcels described in" the 1904 plat were conveyed by patents which make specific reference to said plat, went on to state that he could not "imply" an acceptance by virtue of such fact because it "would be totally speculative to believe that Mr. Lewis, by purchasing lots 5 and 6" in 1906 "believed that he was acting upon the government's implied offer of dedication...."

In our opinion, acceptance of an offer to dedicate is not evidenced by the subjective intent of purchasers of property whose instruments of title make specific reference to a plat[4], but rather by the fact that lots had been sold or otherwise conveyed with specific reference to the apposite plat.

If it is proven by a preponderance of the evidence that 1) there has been a valid offer to dedicate real property to a public use, and 2) lots were subsequently sold or otherwise conveyed by instruments which specifically refer to such plat, there is a legally efficacious dedication of such property. *Pullin v. Victor*, 103 Idaho 879, 655 P.2d 86 (App.1982); *Boise City v. Hon*, 14 Idaho 272, 94 P. 167 (1908).

In *Boise City v. Hon, id.*, this Court cited, with approval, the following language from 13 *Encyclopedia of Law and Practice:*

Where the owner of real property lays out a town upon it and divides the land into lots and blocks, intersected by streets and alleys and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public.... The reason is that the grantor, by making such a conveyance, is estopped as well in reference to the public as to his grantees, from denying the existence of the easement.... According to the great weight of authority, a dedication made as hereinbefore described is irrevocable, and the dedicator is forever concluded from exercising any authority or setting up any title to the same. And that, too, although there has been no formal acceptance by the public authorities. Nor is the irrevocable character of the dedication affected by the fact that

---

**4.** Indeed, in this case, it would have been nigh onto impossible, if not impossible, to produce evidence as to the subjective intent of Mr. Lewis when he acquired lots 5 and 6 in 1906, unless he is a modern day Methuselah.

the property is not at once subjected to the use as designed.

*Id.* at 278, 94 P. at 168.

The Court further cited, with like approval, the following language from Abbott's *Municipal Corporations:*

The mere filing of a map or plat, not sufficient under the statutes, or the making of a survey and the marking of land surveyed into square blocks, streets, alleys and parks, may not of itself be considered such an act as will constitute a dedication to the public of a part of the property. But if the owner makes sales of property with reference to such survey or plat and representations in affecting the sales in regard to the location of streets, squares, parks or other public grounds, a dedication of these *necessarily* follows. The cases are many and establish this proposition beyond controversy. (Emphasis added.)

*Id.* at 279, 94 P. at 169.

In addressing the question of whether, under such circumstances, *i.e.,* an offer to dedicate and subsequent sales of lots by reference to a plat, a public body must accept the offer to dedicate, *i.e.,* the filing of a plat or map not sufficient under the statutes, the Court in *Hon* further stated, citing *City of Corsicana v. Zorn,* 97 Tex. 317, 78 S.W. 924 (1904):

The effect of a deed, then, from Mrs. Zorn and her husband to the different purchasers was to convey to such purchasers the right that they and all persons should be permitted to use the streets and alleys for the purposes designated upon the said plat for all time, and this conveyance vested in the public and in the city of Corsicana as the organized representative of the public, the right to take possession of and use said streets and alleys whenever the progress and development of the town should make it necessary so to do. It is objected on the part of Mrs. Zorn that there has been no acceptance by the city of the dedication. *There was no necessity for such acceptance,* for the right which vested in the purchasers of the different lots and through them in the public was irrev-

ocable. It was not expected that the streets and alleys should all be opened at once, but as is well known in the history of such transactions, many years might elapse before the settlement of that part of the city would require the use of such streets. (Emphasis added.)

*Id.,* 14 Idaho at 279, 94 P. at 169.

In *Smylie v. Pearsall,* 93 Idaho 188, 191, 457 P.2d 427, 430 (1969), it was unequivocally held that:

When an owner of land plats the land, files the plat for record, and sells lots by reference to the recorded plat, a dedication of public areas indicated by the plat is accomplished. This dedication is irrevocable except by statutory process....

We thus conclude that the trial court, having found and concluded that the 1904 plat constituted a valid statutory plat, and having found as a matter of fact that lots were sold with reference to such plat, erred in concluding that there was no valid common law dedication of the sixty-foot strip of land in question.

### The Abandonment Issue

There is no question that the real property involved in this action is now within the physical boundaries of the highway district, and was within the physical boundaries of governmental agencies which previously had jurisdiction over highways within such boundaries.

Under I.C. § 40–1310, the highway district (and its jurisdictional predecessors under earlier statutes) acting through its commissioners, has the power to abandon public highways following a public hearing.

There is no evidence whatsoever, nor does any party contend, that either the highway district or its predecessor having control of public highways took any formal action to abandon the sixty-foot strip in question, or in any way to vacate the same.

While the trial judge concluded that there was no valid dedication of the strip of land in question because of lack of acceptance, and that "it never existed," he further stated, apparently as obiter dictum, that "if the property was ever a public road

... it has long since been abandoned under the provisions of former I.C. 40–104."

Although such conclusion of the trial court was not necessary to the trial judge's ultimate conclusion that there was no common law dedication of the strip of land in question, we feel it appropriate to point out that this Court has heretofore held that the provisions of former I.C. § 40–104 were not intended to be applicable to *dedicated* streets and alleys set out in recorded plats. *Boise City v. Fails,* 94 Idaho 840, 499 P.2d 326 (1972).

■ We have above concluded that there was a valid common law dedication of the sixty-foot strip of land in question, and we further hold the fact that such road had not been worked or used for a period of five years does not constitute an abandonment thereof merely by virtue of former I.C. § 40–104.

Finally, although the trial court concluded that there was no valid dedication, either statutory or common law, it addresses the fact that the plat was filed in 1904, but neither the highway district nor any of its predecessors which had jurisdiction over highways, roads or streets had accepted the United States government's offer of dedication, or exerted any effort to actually open the sixty-foot strip as a roadway.

■ As noted above, the irrevocable character of a common law dedication is not affected by the fact that the property is not at once subjected to the use as designed. *Boise City v. Hon,* 14 Idaho 272, 94 P. 167 (1908). The public exigency requiring the use of the property may not arise for years. *Pullin v. Victor,* 103 Idaho 879, 655 P.2d 86 (App.1982).

■ Furthermore, if, as we have concluded herein, there has been a valid common law dedication, there is no need for any acceptance by a particular governmental agency, since there has been an acceptance on behalf of, or by, the public when lots are sold with reference to a recorded plat. *Boise City v. Hon, id.*

The judgment of the trial court is reversed, and this matter is remanded to the district court for entry of judgment in favor of appellant in conformity herewith; costs to appellant.

BAKES, C.J., and HUNTLEY, J., concur.

JOHNSON, Justice, dissenting.

I dissent from the portion of the majority opinion which holds that there was a valid common law dedication of the strip of land in question. In my view, the trial court's finding that there was no acceptance of the offer of dedication should be upheld. I would, however, remand the case to the trial court for additional findings concerning the trial court's conclusion that there was not a valid statutory dedication.

The majority relies heavily on the decision of our Court of Appeals in *Pullin v. Victor,* 103 Idaho 879, 655 P.2d 86 (App. 1982), *rev. den.* (1983). In *Pullin,* the Court of Appeals held: "Whether an acceptance of a proposed dedication has occurred is an issue of fact." *Id.* at 881, 655 P.2d at 88. In vacating summary judgment that had been granted by the trial court, the Court of Appeals stated:

> Here, from the proof of the sale between the parties, it may be inferred that the lots ... were sold in reference to the plat of the subdivision. Such an inference could result in a finding that the dedication ... had been "accepted."

Id. at 882, 655 P.2d at 89.

This is not a summary judgment case, but a case that was tried to the trial court without a jury. The trial court found that there had not been an acceptance. I.R.C.P. 52(a) provides: "Findings of fact shall not be set aside unless clearly erroneous." The fact that the trial court might have inferred from the sale of the lots that they were sold in reference to the plat did not require the trial court to find that there had been acceptance. The trial court weighed the evidence concerning the sale against the fact that the roadway contained in the offer of dedication "began at the bank of a river where no bridge ever existed, and extended up a steep hill to a point connecting to nothing." I would affirm the trial court's decision that there was no com-

**228**

mon law dedication on the ground that the finding of no acceptance was not clearly erroneous.

The majority correctly points out that the trial court did not explain why it concluded that there had never been a valid statutory dedication of the strip in question. I would remand the case to the trial court for further findings on this issue.

SHEPARD, J., concurs.