## Schickli et ux. v. Keeling et ux.

April 23, 1948.

Abraham & Guthrie for appellants.

Elliot Lee Maddox for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

## Statement of the Case.

"Castlewood" is a high-class subdivision in Louisville in that general residential section known as The Highlands. It was subdivided and developed by General John B. Castleman many years ago and contains many costly and beautiful homes, especially the eastern section of the subdivision. The western end of the subdivision comes to an acute angle at the triangle where Barrett Avenue intersects Castlewood Avenue. In this part of the subdivision are apartment buildings and multiple housing units. Between these two streets and beginning at the pointed intersection thereof and extending through the entire subdivision, as one of its main streets, is Valley Road. When the subdivision was opened, and for many years thereafter, the chief method of transportation from Castlewood to downtown Louisville was via the street car system of the Louisville Railway Company, the Barrett Avenue-Chestnut Street line of that company having its terminus within the subdivision itself. Provided for the turn-around of the Barrett Avenue-Chestnut Street line was a street car loop which entered Castlewood at the corner intersection, above referred to, proceeding over parts of lots 102 to 105, inclusive, crossing Valley Road and proceeding over parts of lots 68 to 74, inclusive, to its place of beginning. At the extreme eastern end of the loop were two shelter houses erected for the convenience of the

users of the street car line. One of these was located on lot 74 Castlewood, the property involved in this litigation, and the other on lot 69, not herein involved. Connecting these two shelter houses and passing on to Valley Road is a 10 foot passway or easement immediately adjoining the railway car loop. This semicircular passway completely bisects lot 74 and was created by virtue of a plat of part of Castlewood Subdivision recorded in Plat and Subdivision Book 2, page 293, Jefferson County Court Clerk's office. At the intersection of lots 74 and 68 Castlewood, this 10 foot wide path joins another path shown on the plat having a width of 11 feet, widening further east to 20 feet and finally merging into Hill Road, a dead-end street shown on the plat of the subdivision. This passway, not involved in this litigation, will be hereafter referred to as the 11 foot passway to distinguish it from the 10 foot passway involved herein. The purpose of this 11 foot passway was to enable persons living on Hill Road, and other points in the eastern end of Castlewood, to proceed to the dead-end of Hill Road, then down the hill on this foot path to the shelter houses of the Louisville Railway Company for the purpose of boarding its cars. The 10 foot passway involved herein could be used by the users of the 11 foot passway as a passway to the lower shelter house on lot 74 and as a way of access to Valley Road.

Several years ago, in its process of modernization, the Louisville Railway Company discontinued the use of street cars on its Barrett Avenue-Chestnut Street line and substituted modern busses. This rendered unnecessary the loop located in Castlewood and it was abandoned, all tracks, poles and wires were removed and the two shelter houses torn down. The busses now used on the line stop and turn at the triangular entrance to Castlewood and if there is any present use of the 10 foot passway on lot 74, it is to enable those using the 11 foot passway from Hill Road to cross over to Valley Road and proceed down it to the new bus line at the Castlewood entrance.

With the abandonment of the car loop and the removal of the tracks which covered approximately the western 1/3 of lot 74, there is now left only this 10 foot semi-circular passway bisecting this lot from its northwest corner to the center of its southern line, thus mak-

ing the lot unfit for use as a building lot in its present condition.

The purpose of the present litigation is to obtain court sanction for the proposal that the 10 foot passway now bisecting lot 74, and which has existed for many years by plat dedication, be closed and abandoned and that in its stead a new 10 foot passway be opened on the eastern side of lot 74 over which foot traffic will pass from the longer 11 foot passway over to Valley Road. In other words, the whole purpose is to move the passway easement from the center of the lot, where it now makes the entire lot useless, to the eastern side of lot 74, which will permit the use of the lot for building a much needed multiple housing unit.

Appellants are the owners of lots 72 and 73 in Castlewood and brought this suit to enjoin appellees, owners of lot 74, from obstructing or closing the 10 foot easement as it now exists on the plat of Castlewood Subdivision and from substituting in its stead the new easement on the eastern side of the lot. To the petition of the appellants, appellees filed their answer, counterclaim and cross-petition, bringing in as new parties defendant all the owners of lots in this section of Castlewood that might be affected by this change, including all holding liens on any of these lots. None of the lot owners or lien holders filed any answer or raised any objection to the proposed change. Even appellants are apparently making no serious objection to the change. No proof was taken in the case and it was submitted on the pleadings and exhibits, which exhibits, consist of the various deeds involved, the plat of the section of Castlewood affected, on which plat is shown clearly the old passway and the new proposed passway, and other exhibits necessary to a proper understanding of the case. On May 16, 1947, the chancellor entered a judgment overruling appellants' demurrer to appellees' answer, counter-claim and cross-petition, dismissing plaintiffs' petition and granting the prayer of appellees' answer, counter-claim and cross-petition that the 10 foot passway shown on the subdivision plat of Castlewood recorded in Plat and Subdivision Book 2, page 293, be closed as shown on said plat and relocated as follows:

"An easement for a pathway 10 feet wide running

from the northeast line of Valley Road across lot 74 to the pathway at the southwest line of lot 68 Castlewood, the southeast line of said 10 foot easement being coincident with the division line between lots 74 and 75 Castlewood as shown on the plat of same recorded in Plat and Subdivision Book 2, page 293, Jefferson County Clerk's office.''

All rights of plaintiffs and cross-defendants in the pathway as originally located were transferred by this judgment to the easement as relocated by the judgment and the title of appellees was quieted to so much of lot 74 across which the easement as originally located existed.

### The Law of the Case.

From the above judgment appellants prosecute this appeal. They contend that a pathway once acquired cannot be changed and cite the case of Vance v. Adams, Ky., 112 S. W. 927. In that case it was held that the owner of the land over which a passway runs cannot, without their consent and at his pleasure, deprive those who have acquired a prescriptive right to that passway of its use by providing another passway equally as good or even better. It was held in that case, which involved a private passway located in the county, that in order to have the passway changed or discontinued, it should be done by application to the county court by the statutes applicable thereto. Kentucky Statutes 1903, Sec. 4289. That method, involving a county lot, is not applicable to the situation in the present case involving a passway in a platted subdivision in a city. What was really decided in the case of Vance v. Adams, supra, was that the owner of the servient estate could not of his own accord arbitrarily change the rights of the dominant estate owner but must resort to the processes of the courts to authorize his attempted action. This is exactly what the owner of lot 74 is doing in this case, seeking the authority of the courts to make the changes he proposes to make.

Other cases cited by appellants are Williams v. Poole, Ky., 103 S. W. 336, 338, and Rowans Ex'rs v. Town of Portland, 8 B. Mon. 232. In the first of these cases it was held, insofar as it is applicable to the present case, that where land, though outside the incorpor-

ated town, is divided into blocks, lots, streets and alleys and a plat thereof is recorded in the County Clerk's office and the lots are sold with reference to the plat, the purchaser of the lot acquires an easement in all the streets and alleys shown on the plat. Cited in that case was the case of Rowans Ex'rs v. Town of Portland, supra, which held to the same effect. Also cited in that case was the case of Elizabethtown & P. R. R. Co. v. Thompson, 79 Ky. 52, in which this court said:

"But it is well settled that when land is laid off into lots, streets and alleys and lots are sold, each lot owner has the right not only to use the streets and ways of ingress and egress, but to have them thrown open to be used by the public in a manner not inconsistent with the use for which streets are established."

From these cases we gather the rule to be that when the owner subdivides a tract of land, lays off streets, alleys and passways therein and sells lots with reference to a recorded plat, the persons to whom he sells the lots and their successors in title acquire the right to use these streets and alleys and they are placed beyond the future control of the original owner. He would, therefore, have no right to close or change these streets and alleys of his own accord and without the consent of the lot owners affected. This does not mean that the location of such streets, alleys and passways are forever frozen and can never be changed. It simply means that he has lost the right to make such changes of his own volition but must proceed in orderly fashion and under proper legal methods to make changes that may be shown to be desirable. In the closing or changing of main streets and alleys in which the general public is interested, that can be accomplished by the method provided by statute for that purpose. In the closing or changing of a mere footpath or passway, such as we have in the instant case, the proper procedure appears to be that to which appellees have resorted in this case, by a proceeding in equity in which all interested parties, in this case the subdivision lot owners, who would be affected by the change are made parties and brought before the court. If no objection is raised, then a judgment of the court authorizing a change will accomplish the purpose.

Appellees cite and rely on the case of Terry v. Boston, 246 Ky. 222, 54 S. W. 2d 909, as authority for the proposition that owners of land could change the location of a passage-way easement where termini were not changed and users' rights were not affected, as is true in the present case. In that case this court said:

"It will be seen that the issue between the parties did not involve the existence of the passway, but merely the right of the owners of the land over which it passed to change its location. No drastic change was made, but a more convenient variation was adopted. The new road paralleled the old one, and was no great distance from it at any point. Slight deviations from the established easement are to be expected, and do not affect the rights of either parties." (citing cases.)

However, the Terry v. Boston case, supra, was a case involving a country passway in which only the two parties were interested; the one user of the passway, and the one owner of the land over which it ran. We have a different situation in a city subdivision in which the pathway may be used by many parties in the subdivision. We think the proper procedure in such cases is that resorted to in the present case, by bringing before the court all lot owners and lien holders on said lots and allowing the court, under proper pleadings, exhibits and proof, to adjudge the propriety of the proposed change.

### The Merits of the Case.

Coming now to the merits of this case. Revolutions never move backward and it is safe to say that the clang, clang, clang of the trolley cars will never again reverberate through the wooded hills and valleys of Castlewood. Never again will the trolley loop and the shelter houses be rebuilt. Never again will there be a need for the old semicircular passway lying parallel with and adjacent to the old loop and leading from one shelter house to the other. Then why should this useless and ill placed passway be continued for a purpose which it can no longer serve? Yet there is still a need for a straight, better located passway leading from the 11 foot passway over to Valley Road for the accommodation of foot travelers from Hill Road, and other parts of Castlewood, to reach Valley Road and the bus

line from the 11 foot passway. This need is supplied by the new location of the passway on the eastern side of lot 74 as located in the judgment of the lower court. There appears to be no equitable reason why this change should not be made and the lot owners who were made cross-defendants have raised no objections. The plat filed in the record shows very clearly that no users of the passway would be disadvantaged by the change. The owners of lots 68 and 69 would have a few feet further to travel to reach the new pathway but the people who come down the 11 foot passway from Hill Road and other parts of Castlewood, who constitute the majority of the users, will have a shorter and more direct route to Valley Road over the new passway than over the old one. Appellees will greatly benefit by freeing lot 74 from the circular passway running through its center, thus permitting its use as a building lot.

We are of the opinion that the chancellor correctly adjudged that the old passway, as it existed on the subdivision plat, should be closed and a new passway opened on the eastern 10 feet of lot 74, as described in the judgment, and that the title to the old passway be quieted in appellees. Holding this view, it is unnecessary for us to consider the two other legal grounds advanced by appellees for changing the easement herein involved.

For the reasons herein indicated, the judgment of the lower court is affirmed.

Judgment affirmed.