457 P.2d 427

**Mabel R. SMYLIE, a widow, Plaintiff-Appellant,**

v.

**Oliver R. PEARSALL and Agnes O. Pearsall, his wife; Earl L. Palmer and Gladys Palmer, his wife; the State of Idaho; Bonner County, a Political Subdivision of the State of Idaho; and All of the Unknown Owners of and Unknown Claimants to all or any Part of the Following Described Real Estate Situate in Bonner County, Idaho, to-wit: Lots 6 and 7 of Paradise Point Lake Lots according to the Plat thereof recorded in Book I of Plats, Page 179, records of Bonner County, Idaho, together with that part of the banks and shores of Priest Lake, if any, lying Westerly of said lots and between the East-West boundary line on the North side of said Lot 6 as extended West to the original natural or ordinary high water mark of Priest Lake, and the East-West boundary line on the South side of said Lot 7 as extended West to the original natural or ordinary high water mark of Priest Lake, together with all riparian or littoral rights pertaining and belonging thereto, Defendants-Respondents.**

No. 10237.

Supreme Court of Idaho.

June 27, 1969.

Rehearing Denied Aug. 18, 1969.

Greene & Hunt, Sandpoint, and Witherspoon, Kelley, Davenport & Toole, by E. Glenn Harmon, Spokane, Wash., for appellant.

Everett D. Hofmeister, Sandpoint, and Edmund T. Brigham, Newport, Wash., for appellees.

McQUADE, Justice.

This case was tried before District Judge Cogswell, sitting without a jury. On September 13, 1954, plaintiff Mabel R. Smylie purchased lots 6 and 7 of Paradise Point Lake Lots according to the plat

thereof recorded in Bonner County. On June 13, 1958, defendant Pearsall purchased lots 8 and 9 of the Paradise Point Lake Lots according to the same recorded plat. The original common owners of all the lots under whose direction they were platted in 1945 were Mr. and Mrs. Earl L. Palmer. Neither they nor Mr. Arthur Tiggelbeck, the original surveyor, appeared at the trial.

SEC. 16 T61 N-R4W-B.M.  Lot A

PLAT*
of
PARADISE POINT
LAKE LOTS
PRIEST LAKE, IDAHO
Scale: 1"-100' July 10, 1945

*Constitutes Plaintiff's
Exhibit No. 1

At the time Paradise Point was platted, a small irregular and triangular shaped parcel of ground lying westerly of lot 7 owned by the plaintiff, and northerly of lot 8 owned by the defendants, was left unplatted and not included within the confines of the lot lines of either lot. This parcel of ground is the land in controversy in this action and abuts Priest Lake as the westerly terminus of a driveway as shown on the plat lying between lots 7 and 8, 11 and 12.

From the testimony presented, and from the court's personal observation of the property in question, it appeared that the disputed area is rocky and steep, sloping northerly from a high area along the north side of lot 8 to the cove on Priest Lake westerly of lot 7. The only flat space on the disputed tract lies next to the line on the southwest boundary of lot 7 shown as being 28 feet long and running N 30° 0′ W. This flat space provides enough room to launch a boat. This flat area would in-

crease the value of either lot 7 or lot 8 as the only property in close proximity where boats could be launched into the lake. The rocky area near the launching site provides a suitable area for a dock and boat moorage in a protective cove.

Most of the trial was devoted to the efforts of plaintiff and defendant to show that each had gained ownership of the disputed parcel by adverse possession. The respective activities of each party over the years are excellently summarized in the court's findings of fact VIII, IX, X and XI. It is sufficient to state here that the court found that neither party had met the requirements of adverse possession. This finding disposed of the main factual issue in the case.

The principal legal issue in the case stems from plaintiff Smylie's argument that the east-west lines of her lot 7 must be extended westward to the ordinary high water mark of the lake, thus including within her ownership most of the disputed area. On the other hand, defendant Pearsall claimed all of the disputed area on the basis of a quitclaim deed to the area which he acquired in 1964 from the Palmers as original owners.

The court disposed of both of these contentions by finding that, since the plat as recorded contained a space, namely, the disputed parcel, forming no part of the platted lots, that parcel of land represented by the excluded space was dedicated to the public use. Though the county records contain no formal dedication, the dedication is presumed from the plat, and no evidence was presented to rebut the presumption. The short form deeds by which the parties took title to their lots refer only to the plat. As a matter of geography, the court found that the disputed parcel forms a natural boat launching and landing area at the terminus of the driveway which was marked on the plat. Moreover, several of the Paradise Point lot owners used the parcel as such. Since the disputed parcel was thus dedicated to the public by the Palmers upon the recording of the plat, Smylie's lot line may not be there extended

and the subsequent quitclaim deed from the Palmers cannot be effective.

The court thus quieted plaintiff's title to all of lots 6 and 7 extended to the ordinary high water mark, excepting only that portion marked as the disputed area on plaintiff's exhibit above and described as follows:

"A tract of land in Bonner County, Idaho, lying north of and adjoining, Lot 8 of Paradise Point, Lake Lots (10 July 1945); (1 Plats p. 179), more particularly described as follows:

beginning at the northeast corner of above Lot 8; thence running due north 10 feet, across the west end of the right of way shown on the south line of Lot 7, on above plat, to the southwest corner of above Lot 7;

thence northwesterly along the southwesterly side of above Lot 7 (N 30° W), 28 feet, to a point (marked by an iron stake);

thence westerly along the mean high water line of Priest Lake to a point 5 feet due north of the northwest corner of Lot 8 in above plat;

thence due south 5 feet to the northwest corner of above Lot 8;

thence easterly, along the north line of above Lot 8, about 75.6 feet, to the northeast corner of above Lot 8, the point of beginning;

together with all riparian and littoral rights belonging to or in any manner appertaining to the parcel above described."

The court further denied damage claims of both parties and directed that each party bear its own costs. Only plaintiff Smylie has appealed, while defendant Pearsall filed no brief and made no appearance in the appeal.

■ This case presents a conflict in the operation of two rather distinct legal principles. On the one hand, the district court concluded that the open space on the Paradise Point plat corresponding to the small parcel of disputed land must constitute " * * * a common law dedication * * *."

When an owner of land plats the land, files the plat for record, and sells lots by reference to the recorded plat, a dedication of public areas indicated by the plat is accomplished. This dedication is irrevocable except by statutory process. The original owner and platter of such land is estopped to deny the dedication of public areas indicated on the plat. One purpose of this doctrine is to protect the interests of purchasers of platted lots in their reliance upon the valuable maintenance of such public areas.[1]

On the other hand, appellant argues that the whole of the surveyed broken line at the western end of her lot 7 is a meander line. As such, that line is not a boundary but rather is merely a surveyor's line of convenience which roughly indicates the contour of the water and determines the portion of the lot for which a purchaser will pay. In contemplation of law, appellant contends, the owner of such a lot actually owns all the land between the sidelines extended to the ordinary high water mark of the water body. In thus claiming ownership of most of the disputed parcel, appellant relies upon other early Idaho cases among other authorities.[2]

On the basis of the reasons and authority which follow, we are convinced that the line of reasoning adopted by the district court must carry. Appellant's main objection to the conclusion of the district court is that the finding of public dedication is based upon cases in which the plats contained spaces actually labeled or named as streets. Appellant would distinguish the situation at bar because the disputed area is not actually labeled on the plat as a public landing, for example.

■ We do not view the absence of a written designation in specific spaces on the plat as always foreclosing the possibility of a public dedication of the areas so represented. It has been recognized that the original owner's intent to accomplish such a dedication may be inferred from other circumstances. In City of Los Angeles v. McCollum,[3] the owner recorded an irregular plat of lots and certain marked and unmarked strips. It was held that an unmarked portion of one of the strips was dedicated as a street according to the character of the strip on the plat and because it represented the continuation of an existing street and supplied access to another named street.

A case quite similar to the case at bar was Cassell v. Reeves.[4] There a tract of land along Herrington Lake was platted as "Daughters Park" into 102 lots. These lots, intended for use as summer cottage sites, were sold with reference to the plat. Two lakeshore lots at the end of "Spring View Avenue" were left unnumbered. The larger part of this space was along the shore and was conceded to be a public area for access to the lake. The smaller portion over which a dispute arose was used by the public as a parking area in connection with the shore portion. These spaces were not named on the plat. The court held that

1. The leading case supporting this doctrine is Boise City v. Hon, 14 Idaho 272, 94 P. 167 (1908) (street in "Arnold's Addition" found dedicated to the public), followed in Hanson v. Proffer, 23 Idaho 705, 132 P. 573 (1913) ("Dora Avenue" in "Vaughan's Addition" found dedicated to the public), reaffirmed in Oregon Short Line R. R. Co. v. City of Caldwell, 39 Idaho 71, 226 P. 175 (1924) ("Bruneau Avenue" found dedicated generally to the public), and mentioned in Worthington v. Koss, 72 Idaho 132, 237 P.2d 1050 (1951); cf. the present statutory pattern in Title 50, Chapter 13, Idaho Code, especially I.C. §§ 50–1309, 50–1312, 50–1313 (S.L.1967, ch. 429).

2. Johnson v. Hurst, 10 Idaho 308, 77 P. 784 (1904); Johnson v. Johnson, 14 Idaho 561, 95 P. 499 (1908); A. B. Moss & Brother v. Ramey, 14 Idaho 598, 95 P. 513 (1908); Lattig v. Scott, 17 Idaho 506, 107 P. 47 (1910); Ulbright v. Baslington, 20 Idaho 539, 119 P. 292, 294 (1911); Callahan v. Price, 26 Idaho 745, 146 P. 732 (1915); Northern Pacific Ry. Co. v. Hirzel, 29 Idaho 438, 161 P. 854 (1916); Stroup v. Matthews, 44 Idaho 134, 255 P. 406 (1927).

3. 156 Cal. 148, 103 P. 914 (1909).

4. 265 S.W.2d 801 (Ky.1954).

192

the entire area represented by the unlabeled spaces on the plat had been dedicated to the public:

> "It is a settled principle that when a map or plat of a subdivided tract of land is exhibited or recorded and conveyances are made of the lots by reference thereto, the plat becomes a part of the deeds, and the plan shown thereon is regarded as a unity. And, nothing else appearing, it is held that all the streets, alleys, parks or other open spaces delineated on such map or plat have been dedicated to the use of the purchasers of the lots and those claiming under them as well as of the public. They become appurtenances to the lots. It is presumed that all such places add value to all the lots embraced in the general plan and that the purchasers invest their money upon the faith of this assurance that such open spaces, particularly access ways, are not to be the private property of the seller. This rule is supported by our leading case of dedication, Rowan's Ex'rs v. Town of Portland, 47 Ky. 232, 8 B.Mon. 232, and many subsequent cases down to Schickli v. Keeling, 307 Ky. 210, 210 S.W.2d 780. See Annotation, 7 A.L.R.2d 607." [5]

The court further noted that "leaving an unmarked space or strip between a street shown on the plat and a navigable river" or other positioning of the space on the plat may show an owner's intention to dedicate areas to public use. Thus, the court found the space was intended for convenient use of the lakeshore in this lakeside development.[6]

■ In the case at bar, the plat of Paradise Point specifically indicates a "road" which runs along at the rear of lots 1–7, continues to the shore between lots 12 and 13, and also runs behind lots 13–21. Connected to this "road" is a "driveway" which runs along lot 7 at the rear of lots 11 and 12 and then turns sharply south and runs at the rear of lots 8–10. This "driveway" is intended to provide land access to each of lots 8–12. The northwest corner of this "driveway" is not closed off but rather opens toward the lake and the small apron of land which is here in dispute. It appears that this parcel was intended as a continuation of the "driveway" providing natural access to the lake. As the district court found, the topography and use of this parcel and the shallow cove which it abuts all confirm this intention as inferred from the character of the recorded plat. We believe that the overall tenor of the plat shows an intention on the part of the Palmers to dedicate the disputed area. This dedication became fixed upon the recording of the plat and the sale of any of the lakeside lots.

Appellant contends that the case of Deffenbaugh v. Washington Water Power Co.[7] and an Illinois case upon which the court then relied, Poole v. City of Lake Forest,[8] compel a contrary result here. Although those cases involved situations similar to the one at bar, we do not find them to be persuasive. In the *Deffenbaugh* case, the plat showed certain streets and avenues as well as an area designated as "beach" or "sandy beach" along La Delcardo Bay, an arm of Lake Coeur d'Alene. There the owner filed for record not only the plat but a written dedication of the streets and avenues which the plat indicated. This dedication did not include the

5. *Id.* at 802.

6. See also, Yurmanovich v. Johnston, 19 Wis.2d 494, 120 N.W.2d 707 (1963) (plat of lots along Lake Ellen showed access routes from hilltop lots across shore lots to the lake and owners of platted lots acquired private easement by estoppel); cf. Carroll v. Hinchley, 316 Mass. 724, 56 N.E.2d 608 (1944) (parcel of land labeled as "park" and situated around a shallow inlet of Lake Quinsigamond held to have been intended according to plat to constitute lake access area for 110 lots of lakeside development); Annotation, Conveyance With Reference to Plat, 7 A.L.R.2d 607, 650–667 [Parks and other open areas] (1949).

7. 24 Idaho 514, 135 P. 247 (1913).

8. 238 Ill. 305, 87 N.E. 320 (1909).

beach area. Thus, apparently on the theory of *expressio unius est exclusio alterius,* the court found no intention to dedicate the beach area. A written dedication of some portion of the plat is not an element in the case at bar. The original owner's intention can be inferred only from the plat itself. In one respect, the reasoning in the *Deffenbaugh* case may support the result we reach here, for the court there went on to declare that it was the owner's intention "to grant a perpetual easement in this beach to the purchasers of lots [in that development]."

The *Poole* case involved a plat of Lake Forest, Illinois, along the shore of Lake Michigan. After first finding that an owner of lakeside lots had successfully acquired areas of beach by adverse possession, the court found insufficient evidence to show that the original owner had dedicated the beach area. The court considered statements written on the plat to the effect that lakeside lots extended only to a line along a bluff before the beach and the fact that the beach area on the plat had not been labeled. The court believed that these circumstances were overcome in balance by the fact that the original owner, subsequent to the recording of the plat, conveyed several portions of beach area to others, thus confirming a supposition that no dedication had been intended originally. It appears that none of the disputed beach in that case represented a continuation of dedicated roads or driveways serving as special access to the water such as exists in the case at bar. In this case, the evidence and law appears to weigh in favor of a dedication and the *Poole* case in any event would militate against the appellant since the respondent had acquired a quit claim deed following dedication. We believe the determination of this issue is also determinative of the case.

■ Appellant Smylie also argues that the court erred in finding that she had not acquired ownership of the disputed parcel by adverse posssession. Of course, it is required by I.C. § 5–210(1) that ·land claimed by adverse possession be "* * * protected by a substantial *inclosure.*" The statute makes this an essential element of adverse possession, yet this requirement was not satisfied in the case at bar. It is true that the character of the enclosure may vary somewhat from case to case "* * * so long as it satisfies what is usual under the circumstances and indicates clearly the boundaries of the adverse occupancy * * *."[9] However, in the case at bar, appellant did not maintain any enclosure, natural or otherwise, to indicate the extent of her claim. Thus, appellant's contention on this point is without merit, even under the *Trask* case cited for support.

■ We come finally to two matters of description of the parcel of land disputed in this case. First, it is clear from the district court's finding of fact that the disputed area is part of a common law dedication of a roadway. The disputed apron of land was found to be the terminus of a driveway forming a natural access to Priest Lake. Under the authorities relied upon by the district court, the parcel was found to have been dedicated to the public use. Thus, as appellant points out, the court's conclusion of law that the dedication was established "solely for the benefit of all the owners of lots in Paradise Point Lake Lots" does not conform precisely to its findings of fact. That legal conclusion appears to create in the other lot owners mere private rights to an equitable easement in the disputed parcel. As in the *Cassell* case, supra, however, since the court found a common law dedication to the public use, the parcel was dedicated for the benefit not only of the other Paradise Point Lake Lot owners but also of the public generally.

Second, the district court's description of the disputed parcel is inaccurate in one respect, as asserted by appellant. The court's judgment should be corrected to indicate the correct boundary of the disputed

9. Trask v. Success Mining Co., 28 Idaho 483, 490–491, 155 P. 288, 290 (1916).

parcel. We instruct the district court to so modify its judgment.

As modified, the judgment below is affirmed.

Respondents did not appear; therefore, no need to award costs.

McFADDEN, C. J., and DONALDSON, SHEPARD, and SPEAR, JJ., concur.