990 P.2d 1224

**Roger DUNHAM and Belinda Dunham, husband and wife, Plaintiffs–Appellants,**

v.

**HACKNEY AIRPARK, INC., an Idaho corporation; Ramona M. Koster-Smith; Robert Hagenbaugh; Judith Bates; Charles Storer; and Dan Zaccanti, the Officers and Directors of Hackney Airpark, Inc., Defendants–Respondents.**

No. 24898.

Court of Appeals of Idaho.

Nov. 23, 1999.

---

**614**

Holmes Law Office, P.A., Coeur d'Alene, for appellants. Edwin B. Holmes argued.

Ramsden Lyons, Coeur d'Alene, for respondents. Brian T. Watkins argued.

SCHWARTZMAN, Judge.

Belinda and Roger Dunham, husband and wife, appeal the district court's order granting summary judgment in favor of Hackney Airpark, Inc. The principal issue presented is whether the plats of the Hackney Field Addition and First Addition to Hackney Field Addition granted unrestricted use of the Hackney Field airstrip and taxiways to purchasers of the adjoining subdivision lots.[1] We affirm the district court's order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1975, Clifford and Florice Hackney's application for a subdivision of their property surrounding their private airstrip near Athol, Idaho, to be known as Hackney Field Addition, was approved by the Kootenai County Commissioners. The filed subdivision plat depicts five blocks. Block one shows a portion of the Hackney Field airstrip and approaches. Block two is a large undivided parcel. Blocks three, four and five are subdivided into residential lots. Those lots that did not have airstrip frontage have an adjacent narrow strip of property labeled "PLANE ACCESS." The Owner's Certificate on the plat states that the "roads within this plat will remain private," that plane access areas are dedicated to the use of the adjacent lot owners and that "[l]ot owners shall have use of airport as covered in deed." In March 1979, the Hackneys's application for an addition of twenty-four lots, to be known as "FIRST ADDITION TO HACKNEY FIELD ADDITION," was approved. The Owner's Certificate on that plat reflects the same language as that in the previous Owner's Certificate. None of the deeds in the record, however, contain any mention of use of the airport by the lot owners.

From the time of its creation, the roads, airstrips and taxiways in the Hackney Field subdivision and addition were maintained by the Hackney–Athol Road Association. In October, 1981, the Athol Airport, Inc. was created to manage the airstrip and roads, which Florice Hackney deeded to it shortly thereafter. This deed recited, in part:

IN CONSIDERATION of $1.00 and other valuable consideration, *and the representations made by Clifford Hackney and reliance thereon by purchasers of real property from Clifford Hackney,* FLORICE HACKNEY, a widow does hereby dedicate, release, remises and forever quit claim unto ATHOL AIRPORT, INC., and its successors and assigns, that certain real property described as follows, to wit:

Block 1, Hackney Field, as shown by those Plats recorded in Book E, Page 202, and

---

1. Belinda Dunham and her husband, Roger Dunham, began as joint plaintiffs in this case. They are referred to collectively as Dunham. At oral argument, counsel for Dunham indicated that Roger Dunham had quit claimed his interest in their lots to Belinda Dunham.

Book F, Page 35, of Plats, Recorded in the office of the County Recorder, Kootenai County, State of Idaho, TOGETHER WITH all roadways shown in said plats.

(Emphasis added.). The lot owners did not object to the corporation's assumption of ownership of the airport property and each lot owner received a share of stock in the corporation by virtue of his or her ownership of a lot in the subdivision. In December 1982, the Secretary of State certified articles of amendment through which Athol Airport, Inc. became Hackney Airpark, Inc.

Nearly seven years later, Belinda Dunham (Dunham) became the owner of lot # 16 in the subdivision addition by virtue of a warranty deed dated September 11, 1989, from one of the Hackney's successors in interest. Dunham also became the owner of lot # 15 through a warranty deed dated September 13, 1995, from another successor in interest. As with all the previous deeds in the record, neither of these deeds contains a reference to the airport or its use by the lot owners. Rather, with each lot purchased, Dunham was issued one share of stock in Hackney Airpark, Inc.

Dunham and her husband own Rare Air, Inc., a business that provides flying lessons and associated services. Some time after purchasing their first lot, the Dunhams began using their property and the airstrip for their business. The relationship between the Dunhams and Hackney Airpark deteriorated as Hackney Airpark began to restrict the use of the airstrip by the residential lot owners.

On April 12, 1996, the Secretary/Treasurer of Hackney Airpark sent all stockholders a set of proposed amendments to the articles of incorporation and bylaws. The proposals were to be voted on either by mail or at the shareholder meeting to be held on May 11, 1996. In anticipation thereof, Dunham filed a complaint on May 10, 1996, alleging that the officers and directors had caused economic injury to them by restricting airport use to only non-commercial purposes. Dun-

ham requested injunctive relief and money damages. Dunham's request for a Temporary Restraining Order was denied. At the shareholder meeting on May 11, 1996, the amendment restricting share ownership was approved. Of the forty-two shares outstanding, of which forty were entitled to vote because assessments had been paid, twenty-five shares were voted for the amendments and five shares against.[2]

Dunham later amended the complaint to a request for declaratory judgment of whether lot ownership in the First Addition to Hackney Field Addition included the right to unfettered use of Hackney Field and whether Hackney Airpark had infringed upon Dunham's property rights by restricting commercial use of Hackney Field. Hackney Airpark answered and filed a motion for summary judgment. Dunham also filed a motion for summary judgment, relying on the pleadings and documents already filed in the case, together with the affidavits of Roger Dunham and Belinda Dunham. Hackney Airpark responded with an affidavit from Florice Hackney. In her affidavit, Florice Hackney explained:

> At the time that Clifford Hackney and I recorded the plat map for Hackney Field Addition and the First Addition to Hackney Field Addition we did not intend to grant any ownership of the airport property, shown as Block 1 on the plat maps attached hereto, to the lot owners in Hackney Field Addition and First Addition to Hackney Field Addition.
>
> In 1981, I deeded that airport property to Athol Airport, Inc., now called Hackney Airpark, Inc. I included the lot owners of Hackney Field Addition and the First Addition to Hackney Field Addition in my decision to deed the airport property to the corporation.
>
> The lot owners did not object to the corporation owning the airport property. Each lot owner was entitled to own a share in the corporation by virtue of his or her

2. Shares were eligible to vote if the shareholder has paid the yearly assessment on the shares owned, providing revenue to operate and manage the airport.

ownership of a lot in Hackney Field Addition and the First Addition to Hackney Field Addition.

The district court issued an extensive memorandum opinion and order in which it noted that the affidavit of Florice Hackney, stating that she and her husband never intended to grant any interest in the airport to the individual lot owners, was uncontroverted. The court also found it unlikely that anyone intended or expected that an entire airport would be dedicated to the private use of a fairly large number of lot owners without some kind of arrangement regarding its operation, management, and use for aviation purposes, particularly in light of the fact that aviation itself is a highly regulated field. The court concluded that a common law private dedication could not be found in either the plat or any of the deeds. Thereafter the court held that there were no genuine issues of material fact and that Hackney Airpark was entitled to judgment as a matter of law. Dunham appeals.

## II.

## THE DISTRICT COURT CORRECTLY CONCLUDED THAT DUNHAM'S PLEADINGS AND SUPPORTING DOCUMENTS FAILED TO PRODUCE FACTS, WHICH IF ACCEPTED AS TRUE, WOULD ESTABLISH THAT THE LOT OWNERS HAD AN UNRESTRICTED RIGHT TO USE HACKNEY FIELD AIRSTRIP

### A. Standard Of Review

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986).

### B. Procedural Posture

■ In general, a party opposing summary judgment is entitled to favorable inferences from the underlying facts. However where, as in this case, both parties have moved for summary judgment on the same evidentiary facts and on the same theories and issues, the parties have effectively stipulated that there is no genuine issue of material fact. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982); *Anderson v. Farm Bur. Mutual Insurance Co. of Idaho*, 112 Idaho 461, 464, 732 P.2d 699, 702 (Ct.App.1987). Moreover, when the evidentiary facts are not disputed and the judge rather than the jury will be the ultimate trier of fact, as in this case under the Uniform Declaratory Judgment Act, I.C. §§ 10–1201 – 10–1217, the judge may draw the inferences he or she deems most probable since the judge alone would be responsible for drawing such inferences from the same facts at trial. Therefore, the court in this case was entitled to draw all reasonable inferences from the facts presented. *Anderson, supra.*

### C. Analysis

Dunham argues that the overall tenor of the plat map of Hackney Field Addition, which surrounds the airstrip and taxiways depicted in the plat, indicates that the Hackneys intended to dedicate the airstrip and taxiways to those who purchased lots in Hackney Field Addition, and further claims that the plat constitutes a common law private dedication of the airstrip and taxiways. Alternatively, Dunham contends that, given the depiction of the airstrip and taxiways in the plat and the fact that the lot owners had free use of the airstrip for several years, Hackney Airpark is estopped from restricting the lot owner use of the airstrip. Hackney Airpark, on the other hand, argues that there was no private dedication of Hackney Field in the recorded plats nor can one be inferred because there was no clear and unequivocal indication by words or acts evidencing an intent to privately dedicate the land to unrestricted use.

■ As explained by the Idaho Supreme Court: "[t]he essential elements of a common

law dedication are (1) an offer by the owner, clearly and unequivocally indicated by his words or acts evidencing his intention to dedicate the land to public use, and (2) an acceptance of the offer by the public." *Worley Hwy. Dist. v. Yacht Club of Coeur D'Alene, Ltd.,* 116 Idaho 219, 224, 775 P.2d 111, 116 (1989). When a land owner plats the land and sells the lots by reference to the recorded plat which depicts streets, alleys and parks or other open spaced delineated on the plat, an irrevocable dedication of those public areas indicated by the plat is accomplished. *Smylie v. Pearsall,* 93 Idaho 188, 191, 457 P.2d 427, 430 (1969) *citing Cassell v. Reeves,* 265 S.W.2d 801 (Ky.Ct.App.1954). In *Cassell,* the court held that three undesignated lots in a platted subdivision were dedicated to the public as a recreational space. The *Cassell* court's analysis, as in *Smylie,* was based upon the surrounding circumstances and conditions of the development and sale of lots, not merely what the plat depicted; because, "[w]hile it is generally held that merely leaving a blank on the plat without designation of its purpose does not of itself sufficiently indicate an intention to dedicate the space to public use, ... other circumstances and conditions may show such an intention." 265 S.W.2d at 803. The elements of a common law dedication for public use discussed in *Smylie* and *Yacht Club of Coeur D'Alene* are equally applicable to ascertaining the creation of a "private dedication." *Monaco v. Bennion,* 99 Idaho 529, 533, 585 P.2d 608, 612 (1978). However, neither *Monaco* nor *Smylie* dealt with supposed private dedication of such a highly regulated area as an airport.

■ In determining whether a private dedication was created, we must look to the language of the owner's certificate, the lands depicted in the plat and transaction documents, i.e., the surrounding circumstances and conditions, for any evidence of intent to create a private dedication. The plat maps at issue do not depict the entire airstrip, nor is the airstrip labeled as such. Only that portion relevant to the description of the adjoining lots is shown and identified as Hackney Field. *Smylie* and *Monaco* are distinguishable from the present case in that they dealt with plats depicting unlabeled spaces wholly on the plat. Looking to the Owners' Certificates for evidence of an intended dedication, we note, as did the district court, that there are only three references to lot owner use of lands depicted in the plat: (1) that the "plane access areas" are dedicated to the use of adjacent lot owners; (2) "lot owners shall have use of airport as covered in deed;" and (3) the "roads within this plat will remain private." As stated above, none of the deeds in the record contain any language covering use of the airport by the lot owners.

Although it appears that the Hackneys did intend that the lot owners have some use of the airstrip, it is not apparent from the record that the Hackneys intended to transfer an unrestricted private interest in the airstrip through the plats. As the 1981 deed from the Hackneys to Athol Airport, Inc., and the affidavit of Florice Hackney evidence, Clifford Hackney made representations to the lot buyers, and Florice Hackney's deed of the airstrip, taxiways and roads to Athol Airport, Inc., later Hackney Airpark, was consistent with those representations. The depiction of a portion of the airport, without designation, does not of itself indicate an intent to dedicate the airport to the unfettered private use of the lot owners and the plats do not establish circumstances and conditions showing that the Hackneys "clearly and unequivocally indicated by [their] words or acts" such an intent to dedicate. *Yacht Club of Coeur D'Alene,* 116 Idaho at 224, 775 P.2d at 116; *Cassell,* 265 S.W.2d at 803.

■ Moreover, Dunham did not become a lot owner until September 1989, long after the lot owners had accepted, without objection, their shares of stock in the corporation created to own and manage the roads, taxiways and airstrip back in 1981. Because Hackney Airpark owned Hackney Field at the time Dunham purchased lots #15 and #16 and received a share in Hackney Airpark for each lot, Dunham could not detri-

mentally rely on the plat as giving unrestricted use of the airstrip.[3] Without any evidence of present intent to create a dedication in the plats and reliance on such by the purchasers, the first element of a common law dedication was not met.

It is beyond cavil that airports are hazardous places. Safe operation requires special skills, special care and some degree of coordination to avoid collisions or other accidents. It is for these reasons that aircraft and airport operations are regulated by both the state of Idaho, I.C. §§ 21–101 – 21–210, 21–501 – 21–520, and the Federal Aviation Administration. For the lot owners who reside adjacent to Hackney Field, there are also the issues of engine noise and the frequency of takeoffs and landings. Being experienced flyers who resided by Hackney Field, it is difficult to imagine that the Hackneys intended that each lot owner have totally unrestricted access to the Hackney Field airstrip. It must be remembered that this subdivision is residential, not commercial. It is logical that the Hackneys intended that use of the airstrip be governed in some manner, and apparent that they represented to the lot buyers that a management body would govern the use of the Hackney Field airstrip.

The district court correctly determined that Dunham had failed to establish that there was any common law dedication of the airport to the private use of the lot owners. Our review of the plats and owners' certificates, the deeds, and the affidavits lead us to agree with the district court. Accordingly, we conclude that the district court did not err in applying the relevant law to the given facts.

### III.

### ATTORNEY FEES

 Hackney Airpark requests an award of attorney fees on appeal on the

grounds that this appeal is frivolous, unreasonable, and without foundation. However, the only argument Hackney Airpark presents on the issue is a single sentence in a separate section of their brief. This Court will not consider issues cited on appeal that are not supported by propositions of law, authority or argument. *See Meisner v. Potlatch Corp.*, 131 Idaho 258, 263, 954 P.2d 676, 681 (1998); *Interlode Constructors, Inc. v. Bryant*, 132 Idaho 443, 447, 974 P.2d 89, 93 (Ct.App.1999). We therefore decline to consider the claim for attorney fees.

### IV.

### CONCLUSION

We affirm the district court's order granting summary judgment in favor of Hackney Airpark. Costs, but no attorney fees, are awarded to respondents on appeal.

Chief Judge PERRY, and Judge Pro Tem McDERMOTT, concur.

---

**3.** Dunham had at least record notice that the deeds from the Hackneys to Dunham's predecessor in interest did not transfer any interest in Hackney Field, and the shares in Hackney Airpark Dunham received at the time the lots were purchased gave Dunham notice that use of the airstrip was managed and controlled by Hackney Airpark.