85 P.3d 675

PONDEROSA HOME SITE LOT
OWNERS, Plaintiff,

and

Harry Peterson and Margaret Peterson,
husband and wife, Plaintiffs–
Counterdefendants,

and

Ralph Stalsberg and Ruth Stalsberg, hus-
band and wife; and Clifford Dove and
Steve Dove, Plaintiffs–Counterdefen-
dants–Appellants,

v.

GARFIELD BAY RESORT, INC.; Verl
E.Thayer and Rita S. Walker Thayer,
husband and wife, Defendants–Counter-
claimants–Respondents,

and

John Doe 1 through 10, being officers
and directors of Garfield Bay Resort,
Inc., Defendants–Respondents.

Carol Randolph, Plaintiff,

v.

Rita S. Walker Thayer, Verl E. Thayer,
Garfield Bay Resort, Inc., Defendants–
Counterclaimants–Third Party Plain-
tiffs–Respondents,

and

Jane Doe Dove I, Jane Doe Dove II, Har-
ry Peterson, Margaret Peterson, The Es-
tate of Harry Peterson, Defendants,

and

Steve Dove, Cliff Dove, Ralph Stalsberg,
Ruth Stalsberg, Defendants–
Appellants.

Rita S. Walker Thayer, Verl E. Thayer and
Garfield Bay Resort, Inc., Counterclaim-
ants–Third Party Plaintiffs–Respon-
dents,

v.

Carol Randolph, Virginia (MC Williams)
Frisbie, Orveline Mary (MC Williams)
Frisbie, and Lola (MC Williams) New-
lin, Counterdefendants–Third Party De-
fendants.

No. 27807.

Supreme Court of Idaho,
Coeur d' Alene, October 2003 Term.

Feb. 11, 2004.

Tevis W. Hull, Sandpoint, for appellants.

James H. Paulsen, Sandpoint, for respondents.

KIDWELL, Justice.

This matter arose out of a dispute between the Plaintiff and the Defendant, relating to the ownership, control, and use of the "lake access" area found in the Ponderosa Home Sites Subdivision (PHS) located in Bonner County. At trial, the district court determined the public owned the "lake access" in the PHS. Plaintiff Stalsberg et al., the Appellant, seeks review of the district court's decision by this Court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 1960, Anna and Kenneth J. McWilliams platted an area of land titled Ponderosa Home Sites in Bonner County. The plat was recorded on January 20, 1961. The plat shows an area marked as "lake access." The "lake access" is a small piece of lakeshore property located between lots 3 and 4 within PHS. The "lake access" is "L" shaped with a small piece of land between lots 3 and 4 connecting with the public road and the larger portion abutting to Garfield Bay on Lake Pend Oreille south of lot 4. The legal description of the exterior boundaries of the plat includes the area marked as "lake access." The "lake access" was identified on the map without block or lot designation and without mention in the dedication. The plat included the following dedication: "[t]hey do hereby dedicate to the public, for the use of the public as highways the roads shown upon this plat." Neither the plat nor any contemporaneous deeds, declarations or papers indicate who is to be the owner of the "lake access."

Ponderosa and Stalsberg et al., filed suit on June 26, 1995, citing multiple causes of action. The parties filed joint Motions for Summary Judgment. The Summary Judgments were denied in part and granted in part. The district court held a trial on October 25, 26, and 27, 1999, and addressed the single issue of ownership of the "lake access" in the PHS. If the court determined that one of the parties owned the "lake access" then a later trial would be required to determine the issue of damages. Neither party called any witness who was in direct privity with the McWilliams. No evidence was introduced to demonstrate how or if the McWilliams had made any representations concerning the ownership of the "lake access." The district court held that neither Ponderosa and Stalsberg et al., nor Garfield et al., established their ownership of the "lake access." Rather, the "lake access" was the subject of a common law dedication to the public. Stalsberg appeals the decision of the trial court.

## II.

### STANDARD OF REVIEW

Conclusions of law by a district court are subject to de novo review by this Court. *Doolittle v. Meridian Joint Sch. Dist.,* 128 Idaho 805, 811, 919 P.2d 334, 340 (1996); *see Iron Eagle Dev., L.L.C. v. Quality Design*

*Sys., Inc.,* 138 Idaho 487, 491, 65 P.3d 509, 513 (2003).

## III.

## ANALYSIS

### The Trial Court Erred In Holding As A Matter Of Law That The Public Owned The "Lake Access."

 The district court held "[t]he 'lake access' was the subject of a common law dedication to the public." A "[d]edication is essentially the setting aside of real property for the use or ownership of others. Idaho recognizes common law dedication of land both for public, as well as for private use." *Sun Valley Land And Minerals, Inc. v. Hawkes,* 138 Idaho 543, 548, 66 P.3d 798, 803 (2003). Public dedications are accomplished either statutorily or by the common law. *Worley Highway Dist. v. Yacht Club of Coeur d' Alene,* 116 Idaho 219, 222, 775 P.2d 111, 114 (1989). Common law dedications to the public must satisfy a two-part test. *See Sun Valley Land And Minerals, Inc.,* 66 P.3d at 803. "The elements of a common law dedication are (1) an offer by the owner clearly and unequivocally indicating an intent to dedicate the land and (2) an acceptance of the offer." *Id; Pullin v. Victor,* 103 Idaho 879, 881, 655 P.2d 86, 88 (Ct.App.1982).

 "The offer to dedicate may be made in a number of ways, including the act of recording or filing a subdivision plat depicting the specific areas subject to dedication, so long as there is a clear and unequivocal indication the owner intends to dedicate." *See Sun Valley Land And Minerals, Inc.,* 66 P.3d at 803. In determining the intent to dedicate, "the court must examine the plat, as well as 'the surrounding circumstances and conditions of the development and sale of lots.' " *Id.*(citing *Dunham v. Hackney Airpark, Inc.,* 133 Idaho 613, 616, 990 P.2d 1224, 1226 (Ct.App.1999)). It is clear that the McWilliams, the original owners of the platted property, intended to "dedicate to the public, for the use of the public as highways the roads shown upon this plat." However, there is no explicit dedication for the "lake access." As the district court found, "[n]either the plat nor any contemporaneous

deeds, declarations or papers indicate who is to be the owner of the 'Lake Access.' "

 The area is depicted on the plat as "lake access" with no other clues as to intent or ownership. As another jurisdiction observed, "[t]he mere leaving of a blank upon the plat without any designation of its purpose cannot be held sufficient proof of an intention of the owner to dedicate the premises represented by such blank or undesignated space to public use." *Poole v. City of Lake Forest,* 238 Ill. 305, 87 N.E. 320, 322 (1909). However, the subject area in this case was not left blank; rather, it was denoted as "lake access," providing additional evidence of the lack of intent to dedicate to the public. Upon examination of the district court's findings of fact, the district court seems to conclude that a common law public dedication occurred because of insufficient evidence of private ownership; therefore, the court concluded "[i]t is more probable than not that the McWilliams intended the 'Lake Access' to be a common law dedication to the public." In other words, the district court decision suggests that a public common law dedication was the default conclusion.

The case at bar parallels the facts of *Deffenbaugh v. Washington Water Power Co.,* 24 Idaho 514, 135 P. 247 (1913). In *Deffenbaugh,* one of the issues this Court decided was whether beach lands were dedicated to the public. *Id.* at 518, 135 P. at 248. The Respondent in *Deffenbaugh* platted her property and dedicated to the public the streets and avenues that were shown on the plat. *Id.* However, the land between the lots and the water line were designated as "beach," and at another location as "sand beach." *Id.* This Court held "[t]he dedication did not include the water front or beach, and the plat does not in any way indicate that it is dedicated to the public, or that it was intended as a dedication in the same sense in which streets, alleys, and avenues are dedicated." *Id.* The Court went on to state there was no evidence of intent by the owner of the property to dedicate the land to the public, but instead, the owner intended "to grant a perpetual easement in this beach to the purchas-

ers of lots...as a special inducement to prospective purchasers." *Id.*

This case parallels *Deffenbaugh* because the plat created by the McWilliams included a dedication "to the public, for the use of the public as highways the roads shown upon this plat." Furthermore, the disputed area was listed as "lake access," which is similar to the listing of "beach" and "sand beach" in *Deffenbaugh.* As the district court concluded, no other evidence suggests ownership of the "beach access." The "beach access" is not a road or highway; therefore, the PHS plat dedication to the public seems inapplicable.

Without analysis, the district court cites to *Smylie v. Pearsall,* 93 Idaho 188, 457 P.2d 427 (1969), which held that an open space on a plat was dedicated to the public. However, *Smylie* has factual dissimilarities to the case at bar. In *Smylie,* there is a platted road which connects to a driveway; "[t]he northwest corner of 'driveway' is not closed off but rather opens toward the lake and small apron of land which is here in dispute. It appears that this parcel was intended as continuation of the driveway providing natural access to the lake...[therefore,] the overall tenor of the plat shows an intention on the part of the Palmers to dedicate the disputed area." *Id.* at 192, 457 P.2d at 431. However, the "lake access" of this case is not a continuation of the road which was dedicated by the McWilliams to the public. The district court, in its findings of fact, found the "lake access" was "connected to and not distinguished from the area marked as a public road." However, the PHS map shows otherwise; the "lake access" is an L-shaped piece of land which perpendicularly intersects the road at the property's narrowest point. In other words, the "lake access" intersects the public road in the same manner as all the other lots of the PHS. Because the "lake access" is not a continuation of the dedicated public road, the *Smylie* holding does not control.

Some courts have failed to distinguish between public and homeowner association ownership. This Court, in *Smylie,* relied upon *Cassell v. Reeves,* 265 S.W.2d 801 (Ky. 1954). In *Cassell,* it was "held that all the streets, alleys, parks or other open spaces delineated on such map or plan have been dedicated to the use of the purchasers of the lots and those claiming under them as well as of the public." *Id.* at 802. In other words, dedicating the use of the open land to the lot owners includes dedication to the public. Giving access and ownership of the "lake access" to Ponderosa and Stalsberg is not the same as giving those rights to the public. If the "lake access" was dedicated to the public, Ponderosa and Stalsberg would also have access, but this fact defeats Ponderosa's and Stalsberg's purpose. Presumably, Ponderosa and Stalsberg purchased lots with the understanding that they could use the "lake access." If the district court finds the McWilliams intended to give Ponderosa and Stalsberg the "lake access" as an incentive to purchase PHS lots, then Ponderosa and Stalsberg, and not the public, should be the owner. Stated another way, upon remand, the district court can decide that Ponderosa and Stalsberg privately own the "lake access."

Additionally, the Court in *Cassell* said that leaving a blank space on a plat does not necessarily mean that a public dedication has occurred; nevertheless, special conditions could show otherwise. *Id.* at 803. In dicta, the Court continued, "[s]uch special condition is leaving an unmarked space or strip between a street shown on the plat and a navigable river." *Id.* The "lake access" of this case is between a public street and a navigable waterway, being Garfield Bay on Pend Oreille Lake; but, the "lake access" is a marked space on the plat. Therefore, the dicta of *Cassell* does not apply to this case because the "lake access" is marked on the plat.

Because of the lack of evidence of ownership, as found by the district court, and the lack of intent to dedicate to the public, this Court vacates the district court and follows this Court's previous decision in *Deffenbaugh* insofar as holding that the "lake access" was not dedicated to the public, and remands the case to the district court to determine ownership of the "lake access."

## IV.

## CONCLUSION

This Court holds the two-part test for common law dedications to the public has not

been satisfied, and the case is remanded to the district court. The first element of the test, which requires an offer by the owner clearly and unequivocally indicating an intent to dedicate the land, is not satisfied. There is a lack of evidence of ownership, as found by the district court, and a lack of intent to dedicate to the public. Therefore, we vacate the district court and follow our previous decision in *Deffenbaugh* insofar as holding that the "beach access" was not dedicated to the public, and we remand the case to the district court to determine ownership of the "beach access."

Chief Justice TROUT and Justices SCHROEDER and EISMANN, concur.

Justice BURDICK, dissenting.

I respectfully dissent from the majority opinion and would affirm Judge Judd's original finding after a court trial in this case. The reason for the dissent can be found in the plat dedication signed by Mr. And Mrs. McWilliams wherein it says in applicable part:

> KNOW ALL MEN BY THESE PRESENTS, that we, K.J. McWilliams and Anna M. McWilliams, his wife, have caused to be laid off and platted into lots, block, and roads the land shown upon this plat to [sic] known as "PONDEROSA HOME SITES."

This shows a specific intent to divide the entire land known as Ponderosa Homesites into three basic legal definitions of lots, blocks, and roads. The McWilliams additionally "dedicate to the public, for the use of the public as highways the roads shown upon this plat. The lakeshore lots include shoreland and riparian rights." I have included as Exhibit A to this dissent the final plat of Ponderosa Homesites. In that plat it is plain to see that a service road is at the top of the plat. It is noted that all other lots are totally inscribed by lot lines except for a "lake access." Lot 4 is an enclosed lot that does not go all the way to the shoreline as lots 1, 2 and 3 do; however, it abuts the lake inlet in its southeastern portion. This shows a specific intent that the lake access is a part of the service road because it shows no intersecting lines at the beginning of the "lake access" and, in addition, Lot 4 is stopped

short of lots 1, 2 and 3 so that there can be a large lake access area. I believe that this shows an intent that "lake access" as noted on the final plat of the Ponderosa Homesites means that it is part of the "roads" dedicated to the public.

The majority tries to distinguish the case of *Smylie v. Pearsall*, 93 Idaho 188, 457 P.2d 427 (1969) from the facts of this case and I respectfully disagree. I have enclosed as Exhibit B to this dissent the Exhibit No. 1 from the *Smylie* case found at 93 Idaho at 189, 457 P.2d at 428. As can be seen in that case the open roadway above lots 12 and 11 is entitled "driveway." That denotes an even more private or personal use than "lake access" in the case before the Court at this time. However, the Idaho State Supreme Court found in a unanimous decision that it was clear that the intent of the landowner was to make the "driveway" a public access. Again, *Smylie* depends upon *Cassell v. Reeves*, 265 S.W.2d 801 (Ky.1954).

The Idaho Supreme Court quotes *Cassell* at 93 Idaho at 191, 457 P.2d at 430 as follows:

> And, nothing else appearing, it is held that all the streets, alleys, parks or other open spaces delineated on such map or plat have been dedicated to the use of the purchasers of the lots and those claiming under them as well as of the public.

In fact, the Court in *Smylie* found the purpose for the "driveway" was land access to lots 8–12. 93 Idaho at 192, 457 P.2d at 431 (See Exhibit B.) The Court in *Smylie* distinguishes *Deffenbaugh v. Washington Water Power Co.*, 24 Idaho 514, 135 P. 247 (1913) as this Court should do also.

In the Deffenbaugh case, the plat showed certain streets and avenues as well as an area designated as "beach" or "sandy beach" along La Delcardo Bay, an arm of Lake Coeur d'Alene. There the owner filed for record not only the plat but a written dedication of the streets and avenues which the plat indicated. This dedication did not include the beach area. Thus, apparently on the theory of expression unius est exclusion alterius, the court found no intention to dedicate the beach area. A written dedication of some portion

of the plat is not an element in the case at bar. The original owner's intention can be inferred only from the plat itself. In one respect, the reasoning in the Deffenbaugh case may support the result we reach here, for the court there went on to declare that it was the owner's intention "to grant a perpetual easement in this beach to the purchasers of lots (in that development)." 93 Idaho at 193, 457 P.2d at 432.

In *Deffenbaugh* the Idaho Supreme Court was looking at a difference in language on the plat and on the attached dedication. The plat had the land between the lot line and water line as "beach" or "sandy beach" while the dedication attached to the plat said nothing about this area. "Thus, apparently on the theory of *expression unius est exclusion alterius* the court found no intention to dedicate the beach area." 93 Idaho at 193, 457 P.2d at 432.

This Court should distinguish *Deffenbaugh,* rely on *Smylie,* and hold there was an intent shown from the plat to make the "lake access" open to the public and thus affirm the trial court who made this original finding of fact as to the McWilliams' intent.

## EXHIBIT A

FINAL PLAT OF

PONDEROSA 'HOME SITES

BEING A PART OF GOVERNMENT LOT 1, SECTION 21,
TWP. 56N.RGE.1, E.B.W.
COUNTY OF BONNER, STATE OF IDAHO.

GUY C. STURMAN — CIVIL ENGINEER
SPOKANE WASHINGTON

DRAWING BY
V.N.Christie — 310 Fernwell Bldg.
Spokane Washington

| SCALE 1" = 50 FT. | SHEET 1 OF 1 |
|---|---|
| DATE SEPT. 20,1960 | |

GRAPHIC SCALE

NOT PLATTED

.TREASURER.
red taxes on the herein platted land

y_____
Bonner County Treasurer

TY AUDITOR
ed filing fee on the herein platted land
for record on this_____day of
_____,___M

By___Bonner County Auditor

Attachment to Memorandum - 98 -

## EXHIBIT B

thereof recorded in Bonner County. On June 13, 1958, defendant Pearsall purchased lots 8 and 9 of the Paradise Point Lake Lots according to the same recorded plat. The original common owners of all the lots under whose direction they were platted in 1945 were Mr. and Mrs. Earl L. Palmer. Neither they nor Mr. Arthur Tiggelbeck, the original surveyor, appeared at the trial.

PLAT*
of
PARADISE POINT
LAKE LOTS
PRIEST LAKE, IDAHO
Scale: 1"-100' July 10, 1945

SEC. 16 T61 N-R4W-B.M. Lot A

*Constitutes Plaintiff's Exhibit No. 1

At the time Paradise Point was platted, a small irregular and triangular shaped parcel of ground lying westerly of lot 7 owned by the plaintiff, and northerly of lot 8 owned by the defendants, was left unplatted and not included within the confines of the lot lines of either lot. This parcel of ground is the land in controversy in this action and abuts Priest Lake as the westerly terminus of a driveway as shown on the plat lying between lots 7 and 8, 11 and 12.

From the testimony presented, and from the court's personal observation of the property in question, it appeared that the disputed area is rocky and steep, sloping northerly from a high area along the north side of lot 8 to the cove on Priest Lake westerly of lot 7. The only flat space on the disputed tract lies next to the line on the southwest boundary of lot 7 shown as being 28 feet long and running N 30° 0' W. This flat space provides enough room to launch a boat. This flat area would in-